December 3, 1906.

————o————

No. 4057.

(Court of Appeal, Parish of Orleans.)

IN RE QUAKER REALTY CO., LTD., PRAYING FOR CONFIRMATION OF TITLE.

1. The purpose of Act 101 of 1898 is to settle forever the

question of title between parties claiming adverse interests, and the action need not be brought against those to whom the property was assessed or who have parted with their ownership, but may properly be instituted against the one claiming ownership at the time of institution of the suit.

2. The pendency of an action in any Court of the Parish of Orleans is not notice of the claim to third persons not parties to said action, unless a notice of pendency stating the name of the Court, the title and number and object of the suit, the date of filing and a description of the property affected, is recorded in the mortgage office.

3. If a tax debtor has not had actual or corporeal possession of property a constructive or civil possession results from the registry of the title of the State or its vendee, which is sufficient to support the constitutional prescription protecting the title from attack.

4. In computing the period of prescription, the purchaser from the State has the right to avail himself of the time which elapsed when the title was in the State.

5. The party who pleads prescription must prove the facts necessary to sustain it.

Appeal from Civil District Court, Division A.

Lapeyre, Monroe & Breazeale, for plaintiff and appellant.

Geo. Montgomery, for defendant and appellee.

DUFOUR, J. The plaintiff, the holder by mesne conveyances of a title from the State under Act 80 of 1888, sues Vallofft, to whom the heirs of the former owner had sold their interest, for the quieting and confirming of his title, pursuant to Art. 233 Const. of 1898 and to Act 101 of 1898.

Defendant urges as defences :

1st. That the sales to the State have been annulled by judgment of date, July 29th, 1904, in the suit of his vendors, the heirs of Rovira against the city and State officers.

2d. That prior to purchasing the property, he obtained a certificate from the state tax collector that the tax sales had been cancelled by judgment, and that he was informed in writing by the Auditor of Public Accounts that there was no record in his office of the sales to the State.

3rd. That the assessments for the years 1882 and 1883 upon which the alleged taxes were based are in the name of Antoine Rovira who had died prior thereto and whose succession had been opened.

4th. That no notice of intended sale was served on the owner as required by the constitution of 1879.

5th. That said property was improperly described.

The property was acquired by Rovira in 1868, and it was sold by his heirs to Vallofft on January 23, 1905. Their suit to annul the sales to the State was filed in March, 1903, and judgment of nullity was rendered in July, 1904.

The State acquired the property in 1885 and, through the Auditor, sold it to the Aztec Land Co. on September 3, 1903, and the latter sold it on May 5, 1905, to the present plaintiff.

As a preliminary point, it is urged that the suit should have been brought not against the present defendant, but against the former proprietor of the property, in accordance with the literal phraseology of Act 101 of 1898.

This view is over-technical and leads to an absurd conclusion; the purpose of the Act is to settle forever the question of title between parties claiming adverse interests, and the action need not be brought, against those to whom the property was assessed or who have parted with their ownership, but may properly be instituted against the one claiming ownership at the time of institution of the suit.

In Slattery vs. Kellum, 114 La. 287, the Supreme Court said:

"The purpose of the act is to provide for the quieting of tax titles by enabling the holder to litigate, not with persons to whom the property may have been erroneously assessed, and who neither have, nor pretend to have, any interest in it but with the former proprietor or proprietors, the words indicating that the suit may be brought against more than one proprietor, immediate or remote, as their interests may appear, and the idea being to enable the holder to quiet his title as to any or all of them."

"Former proprietor" clearly means the holder of the title divested by the tax sale, and it is immaterial, within the meaning of the statute, that such title should have been transferred; the vendee stands in the shoes of the vendor, as adverse holder of the title in controversy, and is alone interested in the matter.

By way of analogy it may be said, that, in construing the constitutional direction that notice should be given to the "delinquent," the Supreme Court has held that notice should

93

be given to the owner at the time such notice issues and not to a previous owner to whom the property had been assessed. 52 An. 1156.

The judgment cancelling the tax sales is not binding on the plaintiff for the reason that no notice of pendency of the action was recorded in the mortgage office in accordance with Act 134 of 1898. The filing of the suit did not deprive the vendor of the right to sell, and the vendee, the Aztec Co., purchased on the faith of the State's unassailed title, spread upon the public records.

With the reasons assigned for the failure to record notice of the suit, we have no concern. The statute deals with the legal effect of the omission and not with the causes which induced it.

Nothing, therefore, precludes the plaintiff from urging in bar of the attack on its title the constitutional prescription of three years. The State acquired the property in 1885 and its title was duly recorded; if the tax debtor did not have actual or corporeal possession of the property, a constructive or civil possession resulted from the registry of title, which is sufficient to support the inhibition established by the Constitution, that no sale of property for taxes shall be set aside for any cause, except that of dual assessment or the antecedent payment of taxes, unless the proceeding to annul is instituted within three years from the adoption of the Constitution, 109. La. 654. At the time that the suit to cancel the sale was instituted, the State's title had for many years been of record, and had remained unassailed for more than three years since the adoption of the Constitution.

The plaintiff has the right to avail itself of the time which elapsed when the title was in the State.

1 Crt. of App. 54, 34 S. R. 425.

The argument that the State's possession was interrupted by the suit to annul has no bearing on the matter. This is not attempted to make a bad title good and there is no prescription *acquirendi causa* involved, the only prescription invoked is against the right to attack the title except for the two causes specified in Art. 233 Const 1898 and not presented here.

This right is barred by the owner's failure to file suit within the constitutional limitation, and prescription had accrued when the suit to annul was instituted. The sale by the Aud-

94

itor was a conventional one which the State like any other owner had the right to make; (51 An. 260) and we know of no law which abridges the owner's power of alienation because of the pendency of a suit in reference to the property. The rights of the plaintiff must be determined, not by the conditions existing at the time of its own acquisition, but by those which obtained at the time of the purchase from the Auditor, by its author, the Aztec Co.

Objection to proof that the property was vacant was made on the ground that there was no allegation to that effect; the objection was properly overruled. Neither text of law nor jurisprudence requires that, in a suit of this character on a prescriptively valid title, possession or want of possession should be alleged; this is a matter of defense. 114 La. 288.

But the party pleading prescription must prove the facts upon which it is based, and here lies the weaknesss of plaintiff's case.

There is no proof of physical possession in any one and the proof as to the vacancy of the property is not sufficient.

It is shown by a witness who examined the property in 1903 that it was then "a foot and a half to three feet under water and overgrown with cypress and underbrush," and that there were no fences around it. Another witness says that when he saw the property just before the trial of the case, there was nothing to indicate that there had been occupancy of the land. This testimony however, does not prove and we may not presume, that the conditions described existed between the years 1898 and 1903, but plaintiff, with whom the law of the case is, should be allowed an opportunity to furnish this proof.

The judgment appealed from is reversed and the cause is remanded to allow plaintiff to prove by competent evidence that the property in controversy was vacant from the year 1898 to the year 1903, both inclusive, the testimony and documentary evidence now in the record to remain without being reoffered, costs of appeal to be paid by defendant and those of the lower court to await the final determination of the cause.

December 3, 1906.

Rehearing refused January 28, 1907.

Writ refused by Supreme Court March 6, 1907, on ground

of prematurity of application but right to apply for writ at proper time reserved.

————o————